OPINION
{¶ 1} Appellant, Nicol Richter, timely appeals her conviction for complicity to commit robbery, a third degree felony in violation of R.C. § 2923.03. The conviction arose because of her involvement in an attempt to steal another woman's purse. She was sentenced to six months in the county jail, six months in prison, and three years of probation following her jury trial in the Jefferson County Court of Common Pleas.
 {¶ 2} Appellant was driving her boyfriend's car when her passenger, Michelle Owens, exited the car and attempted to steal a woman's purse in a grocery store parking lot. Owens was unable to secure the purse, so she jumped back into the car and Appellant drove them from the scene of the crime. Appellant argues on appeal that her conviction was against the manifest weight of the evidence and that the jury erred in believing Owens' testimony over her own. Appellant claims that she was unaware that a robbery was going to occur that day and that it was taking place just outside of her car door. For the following reasons, however, Appellant's argument lacks merit and is overruled.
 {¶ 3} Appellant's sole assignment of error on appeal asserts:
 {¶ 4} "THE JURY'S VERDICT AND THE DEFENDANT'S CONVICTION FOR COMPLICITY TO ROBBERY, IN VIOLATION OF RC 2911.02(a)(3) AND RC2923.03, WAS [SIC] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL"
 {¶ 5} An appellate court should only invoke its discretionary power to reverse a conviction as against the manifest weight of the evidence in extraordinary circumstances when the evidence weighs heavily in the defendant's favor. State v. Otten (1986),33 Ohio App.3d 339, 340, 515 N.E.2d 1009.
 {¶ 6} "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id.
 {¶ 7} Even though a verdict may be supported by sufficient evidence, the court of appeals may find that the judgment is against the weight of the evidence. State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541, citing State v.Robinson (1955), 162 Ohio St. 486, 487, 124 N.E.2d 148. However, such a decision requires the court to disagree with the jury's resolution of inconsistent trial testimony. Further, in order to reverse a judgment on weight of the evidence grounds following a jury trial, all three appellate judges must agree and decide that the conviction must be reversed. Thompkins, supra, paragraph four of the syllabus.
 {¶ 8} Again, Appellant was tried and convicted of complicity to commit robbery. R.C. § 2923.03 complicity provides in pertinent part:
 {¶ 9} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 10} "* * *
 {¶ 11} "(2) Aid or abet another in committing the offense;"
 {¶ 12} Further, R.C. § 2911.02, which sets out the crime of robbery, provides:
 {¶ 13} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 14} "* * *
 {¶ 15} "(3) Use or threaten the immediate use of force against another."
 {¶ 16} Appellant argues that the jury erred in believing Michelle Owens' version of the robbery and failing to believe her version. However, the trial transcript reveals facts contrary to Appellant's assertions.
 {¶ 17} The State of Ohio called three witnesses. The victim, Michelle Pyle, was the first to testify. She testified that the incident occurred shortly after she exited her vehicle in the Kroger parking lot in Steubenville, Ohio in October of 2004. It was cold and raining. She walked toward the rear of her vehicle when a car pulled up quickly. The car stopped abruptly and the passenger jumped out of the car. Pyle's elbow was struck by the car door and she was blocked between the car door and the rear of her vehicle. The passenger, who was identified as Owens, then began pulling at Pyle's purse, which was on her arm at the time. Pyle resisted but Owens kept pulling. (Tr., pp. 68-71.)
 {¶ 18} Pyle stated that the driver of the vehicle had her head turned away from them and was, "kind of watching for something." The driver did not attempt to drive away. Pyle also heard the driver of the car say: "Get the purse, get the purse." Pyle had no doubt in her mind that the driver of the car was the one yelling, "get the purse." (Tr., pp. 78-79.)
 {¶ 19} Robert Cook also testified on the state's behalf. He was in his vehicle and behind the car driven by Appellant before the attempted robbery occurred. Cook said Appellant's vehicle stopped suddenly. He saw the passenger get out the car and attack Pyle. He also saw Owens pulling at Pyle's purse. Despite his wife's pleas not to get involved, Cook exited his vehicle and tried to secure Owens. However, she was able to jump into the backseat of Appellant's car. Cook tried to retrieve her from the vehicle, but was unsuccessful. He was able to get a good look at the driver, who he later identified as Appellant. (Tr., pp. 80-85.)
 {¶ 20} Michelle Owens also testified at trial. She explained that she was currently in the county jail for her involvement in this attempted robbery. She pleaded guilty and was sentenced to six months of incarceration. Owens testified that she and Appellant decided to steal a purse that day because they both needed money. Owens was a friend of Appellant's boyfriend at the time, and they were both living with him. They were also driving his car on the day of the robbery. (Tr., pp. 87-88, 98, 111.)
 {¶ 21} Owens testified that she and Appellant initially waited in Kroger's parking lot for about an hour. Appellant sat in the car and Owens was walking around in the rain looking for a victim. Owens said that she was nervous at the time and that Appellant intimidated her. When Owens returned, Appellant told her to hurry up and gave her a mean look. The two then went to a school parking lot to try to find a victim. Appellant was driving the entire time. They eventually returned to Kroger's parking lot and they were finally about to give up and drive away when they spotted Pyle. Owens then jumped out to take Pyle's purse, but Pyle was too strong. (Tr., pp. 87-94.)
 {¶ 22} Owens got back in the car, and Appellant drove away. The car was fishtailing out of the parking lot. Appellant told Owens that she saw people writing down their license plate number. Appellant later told Owens to put mud on the license plate to conceal it. (Tr., pp. 95-97.)
 {¶ 23} The next day Owens learned that her husband was involved with another woman. She described herself as having a nervous breakdown. She was admitted to a hospital for treatment for her psychological issues for about eight days. Owens said that she had never done anything that brazen before she knew Appellant. She and Appellant had only known each other for about one week before this incident. (Tr., pp. 98-101.)
 {¶ 24} Detective Regis Holzworth testified that he investigated this robbery. Upon locating Appellant, she evidently said something to the effect of, "I knew we shouldn't have done it. * * * It wasn't my idea." Although Appellant admitted she drove the car that day, she denied knowing that a robbery had occurred until afterward. However, Holzworth said that Appellant acknowledged that she was an accomplice. (Tr., pp. 124-125.)
 {¶ 25} Appellant's manifest weight argument is based solely on her own testimony. She denied knowledge of the robbery. Appellant testified that she thought she was driving Owens away from a fight or away from some kind of danger the day of the incident. Appellant testified that she and Owens were going to the grocery store and while they were in the parking lot, Owens yelled for her to stop the car. Owens then got out of the car and became involved in an altercation with another woman. Appellant heard raised voices, but she said she did not know a robbery was occurring. Instead, Appellant claims that she thought the two women were involved in a fight.
 {¶ 26} Appellant also said she heard someone yell: "She's grabbing my purse, grab my purse," and, "[c]all the police." Appellant also stated that she saw an arm reaching into the car, but she did not know whose arm it was. Owens then told Appellant to drive to her friend's house. Appellant also explained that she thought that she was going to be in trouble; however, she never intended the crime to occur. (Tr., p. 151-158, 162.)
 {¶ 27} At trial and on appeal, Appellant argues that Owens' testimony lacked credibility because she pleaded guilty and received a lesser sentence based on her cooperation at Appellant's trial. However, there was no testimony in support of this assertion. Appellant also argues that Owens admitted herself in the hospital to avoid being charged for robbery and that the jury was misled by Owens' testimony.
 {¶ 28} However, it has been repeatedly held that the jury is in the best position to view the evidence, resolve questions of fact, and to judge the credibility of witnesses. State v.Hopfer (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321; Statev. Venham (1994), 96 Ohio App.3d 649, 653, 645 N.E.2d 831. Upon the presentation of conflicting evidence, we must uphold the jury's determinations absent a showing that the trier of fact clearly lost its way and created a manifest miscarriage of justice. Otten, supra, at 340, 515 N.E.2d 1009.
 {¶ 29} Contrary to Appellant's arguments, her conviction was not a manifest miscarriage of justice. Instead, it appears as though the jury simply believed Owens' testimony over Appellant's. Owens testified that both she and Appellant decided to steal a purse well in advance of encountering Pyle. After Owens' failed attempt, Appellant drove her away from the scene of the crime inquiring whether she got the purse. In addition, Pyle heard Appellant urge Owens to grab Pyle's purse, and Appellant never attempted to stop the robbery.
 {¶ 30} Further, it can be argued that Appellant's testimony appears suspect and self-serving, especially when we note that she claims to have heard someone outside her vehicle saying something to the effect of: "She's grabbing my purse, grab my purse." This conveniently corresponds to what the victim testified that she heard Appellant say at the scene. Further, it is not inconceivable that the jury disbelieved that the driver of a vehicle could be unaware of her passenger's attempt to commit a robbery offense just outside the passenger's door.
 {¶ 31} Based on the foregoing, Appellant's sole assignment of error lacks merit as there was credible direct evidence that Appellant was aiding and abetting the attempted robbery. Thus, Appellant's conviction was not against the manifest weight of the evidence and is hereby affirmed.
Donofrio, P.J., concurs.
DeGenaro, J., concurs.